## R. D. Bumpass v. N. W. Mitchell et al.

### Decided April 16, 1910.

**1.—Evidence—Written Instrument—Varying by Parol.**

With certain well-established exceptions and in the absence of fraud, accident or mistake, an agreement which has been reduced to writing is conclusively presumed to express the final purposes and conclusions of the parties to it, and hence new conditions can not be added to the agreement nor its terms varied by parol evidence.

**2.—Same—Case Stated.**

By an agreement in writing the trustees of the legal title to certain lands, and others beneficially interested, agreed to convey the same to B. and to M. upon the execution by B. and M. of certain notes for the purchase money; afterwards B. brought suit against all said parties interested in the land and against M. to compel the trustees to execute a deed to him alone, alleging that M.'s name was inserted in the writing without his knowledge and for the sole purpose of securing him in the repayment of certain monies expended by him in and about the land; B. further alleged that he was the sole owner of all rights under said agreement; that M. had been repaid all the money expended by him; tendered to the defendants the notes as stipulated by said agreement, except that the notes were signed by B. alone, and prayed for specific performance of the contract; M. and the other defendants answered by general denial, and M. expressly claimed one-half the land as provided in the agreement. Held, the court properly sustained objection to testimony tending to prove the foregoing allegations, on the ground that it would vary and destroy the written contract.

Error from the District Court of Jones County. Tried below before Hon. Thos. L. Blanton.

*A. H. Kirby,* for plaintiff in error.

*J. P. Stinson* and *Hardwicke & Hardwicke,* for defendants in error.

CONNER, Chief Justice.—Prior to the 11th day of February, 1907, plaintiff in error held for himself and others the legal title to what is known as the Field & Montgomery Ranch in Jones County. On that day by agreement of all parties in interest plaintiff in error conveyed said land to John Sayles and S. P. Hardwicke as trustees to take charge of the land and numerous purchase money notes that had been taken for parts of the ranch theretofore sold, and, after payment of certain claims against the property and the adjustment of certain contentions between the parties, to divide the property remaining into two parts, plaintiff in error to receive one of these parts and J. N. Dodson and James G. Lowdon, Jr., or their assigns, were to receive the other part. On the same day and as part of the transaction stated, an agreement was entered into, signed by the State National Bank, John C. Harrison, trustee (holding certain claims against the property), J. G. Lowdon, Jr., J. N. Dodson and plaintiff in error. The agreement in part provided:

"It is understood that John Sayles and S. P. Hardwicke as trustees, in receiving a deed of even date herewith from R. D. Bumpass conveying to them portions of the Steffens' subdivision of the Fields & Montgomery ranch in Jones County, Texas, by which said deed there is conveyed to the said Sayles and Hardwicke as trustee, among other subdivisions, the following subdivisions of said subdivision, to wit: Lot three (3) in block three (3); lot three (3) in block seven (7); and lot five (5) in block No. nine (9): ............ as to said lot 3 in block 7, said Bumpass on December 1, 1905, contracted to sell lot 3 in block 7 to N. W. Mitchell and R. D. Bumpass for a consideration of $1290.40, to be paid for in five notes of that date, four of them for $161.30, and the last of them for $645.20, maturing respectively on December 1, 1906, 1907, 1908, 1909 and

1913, with interest from December 1, 1905, at the rate of eight per-cent per annum, payable annually, with the usual default provision and attorney's fees.

"And as to said lot 5 in block 9 said Bumpass on December 1, 1905, contracted to sell same to N. W. Mitchell and R. D. Bumpass for $2029.30, to be paid for with one note for $253.67, another for the same amount, another for same amount, another for $253.64, another for $1014.65, maturing respectively on December 1, 1906, 1907, 1908, 1909 and 1913, with eight percent interest from said December 1, 1905, interest payable annually, with the usual default provision and ten percent attorney's fees clause. Now, if said Bum-pass and said Mitchell pay to the said Sayles and said Hardwicke as trustees, the said two notes now past due and interest on all of said amounts to December 1, 1906, and execute the balance of said notes, said Sayles and Hardwicke as trustees are to convey to said Bumpass and the said Mitchell said lot 5 in block 9, and said lot 3 in block 7, retaining vendor's lien to secure said notes, this to be done in ninety days from this date."

Plaintiff in error instituted this suit seeking to compel the trustees, John Sayles and S. P. Hardwicke, to execute and deliver to him deeds conveying subdivisions No. 3 in block 7 and No. 5 in block 9, mentioned in the above agreement. He alleged that he was the owner of said subdivisions, and, declaring upon the contract above copied, further alleged in substance that while the said contract provides for a conveyance to plaintiff and N. W. Mitchell upon the terms therein stated, that the provision as to Mitchell had been incorporated in the contract by the plaintiff without the knowledge of Mitchell and for the purpose of merely securing Mitchell in the repayment by the plaintiff of certain sums of money expended by Mitchell in making improvements on said land, and not with any purpose of vesting in Mitchell any other or further right, title or interest in or to said lands; that plaintiff had long since repaid to Mitchell all sums so paid out by him in improving the land and, therefore, he had no other title or interest in the same whatever. Plaintiff further alleged that he had tendered to the defendants Hardwicke and Sayles the sums of money and notes provided to be paid for said lands by the agreement, but that they had refused to execute such a deed, and tender of the money and his individual notes was made in the petition.

Defendants Hardwicke and Sayles answered setting up the con-tract attached to the plaintiff's petition and asserted their readiness to execute deeds to whomsoever the court should decree them to be made. The defendant Mitchell answered disclaiming as to all but a one-half interest in the lands, pleaded not guilty, and general denial, and specially set up the agreement on the part of the plain-tiff to sell him a one-half interest in said lands, and offering to join plaintiff in performing the agreement. The State National Bank of Fort Worth, J. N. Dodson, J. G. Lowdon, Jr., Mrs. M. C. Hardwicke (who had later acquired an interest in the subject mat-ter), joined by her husband, S. P. Hardwicke, appeared and adopted the pleading of the defendant, N. W. Mitchell.

There is no dispute in the facts proven. The evidence consists of a number of written instruments and agreements, including the one declared upon by plaintiff in error, defining the several interests and duties of the parties to this litigation, which we do not deem it necessary to here fully state. In addition to the testimony referred to, however, plaintiff offered to testify substantially as alleged that he had never had any agreement of any kind with the defendant Mitchell to insert in the contract declared upon the provision that the lands in controversy were to be conveyed to said Mitchell and himself jointly; that said provision as to the defendant, N. W. Mitchell, had been incorporated into the contract by the plaintiff without the knowledge of said defendant and for the sole purpose of securing him in repayment by the plaintiff of certain sums expended by N. W. Mitchell in making improvements on the land mentioned, and not with any purpose or intention of vesting in said Mitchell any other or further right, and that the plaintiff had long since repaid the defendant Mitchell all sums so expended by him for improvements placed on said lands.

To this testimony all defendants, save John Sayles, trustee, objected because it would, "first, vary said writing; second, would give to said Bumpass a right in and to said land not evidenced by the writing, but against the writing, and therefore in contravention of the statutes of fraud; third, because if the oral testimony was admitted it would require these objecting persons to receive in lieu of the notes of the said Mitchell and Bumpass jointly, the individual notes of the said Bumpass; fourth, there are no allegations or claim of accident, fraud or mistake in the execution of said instrument so proposed to be varied by parole; fifth, plaintiff in his pleadings claims under said instrument, and by this testimony is proposing to destroy the instrument in part under which he claims, and to hold under the same after same is by parole varied, changed and altered."

The court sustained these objections and instructed a verdict for defendants and judgment was entered accordingly.

The important question in this case, and substantially the only one, is whether the court properly excluded the evidence objected to. We need not cite authorities for the well established rule that mere recitals in a written instrument of the consideration and of other facts may generally be varied by parole evidence. So, too, trusts may under certain circumstances be engrafted upon conveyances by parole, and it may be so shown that a deed purporting to convey full title was intended only as security for the payment of a debt. But with the exceptions indicated and with some others not necessary to notice, it is equally well settled that in the absence of fraud, accident or mistake, neither of which is alleged in this case, an agreement which has been reduced to writing is conclusively presumed to express the final purposes and conclusions of the parties to it, and hence that new conditions can not be added to the agreement nor its terms varied by parole evidence. See 17 Cyc., 567, paragraph 15, and authorities cited. The same authority on pages 632 and 661 (and we do not cite others because the principle is so well known), in speaking of the statements in receipts and of the consideration

in written instruments which ordinarily may be contradicted, says: "Where a writing, although in the form of a receipt, also embodies the elements of a contract, it is, in so far as it expresses the contract or is contractual in its nature, subject to the same rules as any other contract and is not open to contradiction by parole." And again that: "Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of payment of a money consideration, and is of a contractual nature, as where the consideration consists of a specific or direct promise by one of the parties to do certain things, this part of the contract can no more be changed or modified by parole or extrinsic evidence than any other part, for a party has the right to make the consideration of his agreement of the essence of the contract, and when this is done the provision for the consideration of the contract must stand upon the same plane as the other provisions of the contract with reference to the conclusiveness and immunity from attack by parole or extrinsic evidence."

Applying these principles, and they are unquestionably supported by the great weight of authority, we think the court's ruling was correct. It is true that defendant N. W. Mitchell was not a party to the contract, and hence it may be well doubted whether he can avail himself of the objections made; but the other objecting defendants were not only parties to the instrument, but also parties in interest. The duty was devolved upon the trustees to faithfully execute the trust and to secure for the beneficiaries the largest sum that could be procured for the purpose of liquidating the many claims against the land, and for subsequent partition between plaintiff in error and the other parties beneficially interested. The agreement authorized the trustees to convey the land in controversy only when the money specified in the agreement and the joint notes of both plaintiff in error and N. W. Mitchell were tendered to them. This provision we think was contractual in its nature and, regardless of other objections made, the trustees should not be compelled to accept the individual note of plaintiff in error when the joint note of plaintiff in error and N. W. Mitchell was expressly provided for, and the beneficiaries other than plaintiff in error secured the right by the agreement to object to the acceptance of any less security. This view is emphasized by the failure of the record to show the value of the land in controversy, or anything in respect to the solvency or want of solvency of either plaintiff in error or N. W. Mitchell. For aught that appears the name of N. W. Mitchell to the obligation to liquidate the deferred payments may be of very material value and ultimately result to the benefit of all parties in interest.

So concluding, we think the judgment must be affirmed, and it is accordingly so ordered.

*Affirmed.*

Writ of error refused.