## TATE et al. v. TATE. (No. 551.)

Court of Civil Appeals of Texas. Eastland.
March 1, 1929.

Rehearing Denied March 29, 1929.

Grisham Bros., of Eastland, for appellants.
G. E. Smith, of Comanche, for appellee.

FUNDERBURK, J. A. A. Tate and wife, Sallie Tate, were married in 1873, and moved to Texas in 1876. April 1, 1876, C. C. Campbell and wife executed to W. H. Key, the father of Mrs. Tate, a bond for title to the S. E. one-sixth of the Joseph Robarth survey. The consideration was $300 cash and a note for $391.93. A. A. Tate, at the request of Key, advanced and paid the cash consideration. August 3, 1876, W. H. Key, joined by his wife, executed and delivered to Allen Tate (A. A. Tate) and wife, Sallie Tate, a deed covering the same land. A. A. Tate caused the deed to be filed for record on August 4, 1876, the same day the bond for title shows to have been filed. Shortly afterwards A. A. Tate went into possession of a particular portion of' the tract described in the bond for title and' deed, consisting of 183 acres; made permanent and valuable improvements on same, and remained in continuous occupancy of same and claiming it as his own, down to the date of the death of Sallie Tate on October 21, 1883. About February 20, 1879, W. H. Key and wife deeded to M. J. Coggins a tract of 175 acres lying south of the said 183-acre tract, and also 80 acres west of the 183-acre tract. At the same time said parties deeded to one Hutchison 80 acres lying west of the 80 acres deeded to Coggins. All these tracts were included in the boundaries of the land previously deeded by Key and wife to Tate and wife. The consideration for the deed to Coggins was the discharge of the $391.93 note given by Key in part payment of the land, of which Coggins was then the holder. The deed of 80 acres to Hutchison was in discharge of attorney's fees incurred by Hutchison as attorney for Coggins in an effort to collect the note. The making of these deeds was at the time known to, and acquiesced in by, A. A. Tate, although he did not join in the deeds executed by the Keys nor make any separate conveyance. April 11, 1889, Coggins deeded the 175-acre tract to A. A. Tate. Between 1890 and 1892, as a result of compromises and lawsuits, A. A. Tate established title as against third parties to the land involved in this suit, which, as to amount of .acreage, is shown by some of the documentary evidence to consist of 529¾ acres. From 1892 to 1894 he inclosed all the land within fences, and which has remained so inclosed until the filing of this suit. On July 18, 1881, C. C. Campbell and wife executed a warranty deed to W. H. Key, covering the same land included in the previous bond for title, excepting two parts indefinitely described.

In this suit A. A. Tate as plaintiff seeks to recover title to all the land as against the defendants; the latter being the children and grandchildren of Sallie Tate, plaintiff's said first wife, and claiming as her heirs. Briefly stated, in the light of the foregoing facts, it is the contention of A. A. Tate that he acquired title to the 183-acre tract by parol purchase from W. H. Key, he having gone into possession under the parol agreement and having made permanent and valuable improvements on the same; that, although the land was thus acquired during the lifetime of his wife, Sallie Tate, it was his separate property, because the consideration paid for same was obtained from the estate of Tate's father. He repudiates any claim of rights under the deed from Key and wife to Tate and wife by seeking to show that same was designed to prevent creditors of Key from levying on the land covered by the bond for title, or, if not, that the deed erroneously and as the result of mistake named Sallie Tate as a grantee, and included more land than the 183-acre tract; that his title to the 175-acre tract came through Coggins' deed to him, made after the death of Sallie Tate, the consideration having been paid from moneys from his separate estate, and that such title has also been aided and perfected by subsequent adverse possession; that he acquired by limitations the strip 254 varas wide south of the 175-acre tract, excluded in the deed from Coggins, because it was mistakenly excluded from the deed, and was, in fact, a part of the land intended to be covered, and was taken into possession along with the 175-acre tract; that, prior to certain lawsuits and compro-

mises by which the true boundaries of the Joseph Robarth survey were established, appellee's claim and possession had been restricted to the 183-acre tract as it was defined on the ground, and, after establishment of the true boundaries, all the land had been fenced and title by limitation acquired, which became perfected after the death of Sallie Tate, and that therefore the property became his separate estate and not community.

The trial court gave judgment for A. A. Tate for all the lands sued for, except as to an undivided one-half interest in the 183-acre tract, which was adjudged to the defendants. The defendants have appealed, and from here on the parties will be designated as appellants and appellee.

This is the second appeal of the case. In the suit as originally brought appellee claimed under the deed from W. H. Key and wife to himself and wife, Sallie Tate. This court, in effect, held that the fact that the deed named Sallie Tate, as well as appellee, as grantee, rendered it immaterial that the latter may have paid the consideration from his separate estate, and that, in the absence of pleading and proof that it was conveyed to Sallie Tate in trust for A. A. Tate, the latter could not recover the property as his separate estate to the exclusion of the heirs of Sallie Tate. Tate et al. v. Tate (Tex. Civ. App.) 299 S. W. 310.

We are first confronted with objections to a consideration of appellants' assignments of error. There are fifty-one assignments of error. Apparently all are relied upon, since one or more propositions are urged under each assignment from 1 to 37, inclusive, and then appellants undertake to adopt as propositions, without repeating them, each assignment from 38 to 51, inclusive. Some of the assignments may not be subject to just criticism. Some of the propositions may be good, but the fact must be kept in mind that a perfectly good assignment may be rendered of no avail by the failure to assert a good proposition thereunder. Likewise, a good proposition is wholly unavailing, unless based upon a proper assignment. It is equally as true that there may be a good assignment and good proposition thereunder, and yet both be unavailing because of the want of a proper "statement from the record," as provided in rule 31 (230 S. W. vii). There is such a fundamental distinction in the essential nature of an assignment of error and a proposition of law that it is the exception rather than the rule when an assignment of error is also good as a proposition. Tested by these considerations, we doubt if there is a single assignment in appellants' brief that is entitled to consideration. It will serve no useful purpose to set forth a detailed criticism.

One thing may be mentioned which alone would justify this court in declining to consider any point presented for our review. At page 23 of appellants' brief they say: "Appellants here avail themselves under the rule of making a complete statement under all propositions."

This is followed by a statement, largely single spaced, covering more than 22 typewritten pages. We know of no rule sanctioning such practice. On the contrary, the provisions of rule 31, supra, necessarily exclude it. By the rule "such argument or discussion as is desired" is to be "addressed *respectively to the several propositions or points presented*" (italics ours), with a reference to the authorities relied on, "and a clear and accurate statement of the record bearing upon the *respective propositions*" (italics ours), etc. Only when more than one proposition arises out of the same ruling or action of the court, or when the same portions of the record are proper and necessary to support each of a number of propositions, would it be proper to make a single statement serve more than a single proposition. The purpose of the rule is to enable the court in a consideration of each proposition to have before it, unmixed with irrelevant matters, a brief digest of all parts of the record necessary or proper to an understanding of same, without the necessity of searching through the transcript and statement of facts. It is manifest that where, as in this case, there are numerous propositions seeking to raise almost every different kind of a question that can arise in an important lawsuit, the purpose of the rule is thwarted if all the record necessary to the support of each and every proposition be included in one statement. It is little, if any, less inconvenient than it would be for the court to search the record itself.

Appellants insist that some of the errors attempted to be assigned are fundamental and require consideration, regardless of any failure to comply with the rules. We are impressed with the view that we have before us an unrighteous judgment, and frankly have searched the record to discover errors apparent therefrom that would justify us in giving consideration to same as fundamental. We have, however, been unable to satisfy ourselves of the existence of fundamental error.

Appellants' twenty-fifth and thirtieth assignments adopted as propositions undertake to present questions of real merit. They are, as follows:

"25. The Court erred in rendering judgment for the plaintiff for all the lands save and except a one-half (½) interest in 183 acres, there being neither pleading nor proof in the record which would authorize the rendition of any such judgment under the law, under the issues as joined, or under one scintilla of proof as offered."

"30. The Court erred in holding, if it did hold, that the plaintiff was entitled and in

rendering a judgment to the plaintiff for any portion of said lands upon the theory of a limitation, if the Court did so hold since all the testimony shows that there was no limitation initiated as against any of the defendants in this case, it affirmatively appearing that the deed from the Keys purported to convey all the lands in controversy in this suit and which deed was never attempted to be repudiated, modified, cancelled or reformed and it further appearing that there was never any actual, open, adverse and notorious possession on the part of the plaintiff as against any of these defendants and that at no time did the plaintiff ever assert adverse possession as against these defendants under any of the proof as offered in this case whatsoever and wherefore no part of said lands should have been awarded to the plaintiffs upon the theory of limitation."

We have determined to exercise the discretion which in Cammack v. Rogers, 96 Tex. 457, 73 S. W. 795, the Supreme Court holds we have, and to dispose of this appeal on the basis of these assignments.

On the first trial appellee claimed under the deed from Key and wife to appellee and his wife, Sallie Tate. On the second trial this claim was attempted to be abandoned. Substituted for same is the one now made that appellee acquired title to the 183-acre tract by parol sale; that he acquired title to the 175-acre tract by the deed from Coggins after Sallie Tate's death, and that the consideration for both tracts consisted of money that was his separate estate; and that he perfected limitation title to all the remainder of the land after the death of Sallie Tate, which resulted in its becoming the separate property of himself and not community of himself and Sallie Tate.

We are not advised from the record upon what findings the trial court awarded judgment in favor of appellants for a one-half interest in the 183-acre tract. The trial court may have concluded that the consideration was not paid as claimed wholly from moneys received by Tate from his father's estate. Possibly the court concluded that the acceptance of the deed from Key and wife to appellee and wife rendered it immaterial whether the consideration consisted of moneys so received. The evidence, we think, was sufficient to support either or both such findings. Certain it is that the trial court found that the 183-acre tract was community property, or at least that Sallie Tate owned half interest therein, else the judgment would be wholly inconsistent.

Appellee alleged that, shortly following the filing of the deed from Key and wife to appellee and wife, he went into possession of the 183-acre tract. It is true he testified that he had done so nearly a year previously to the making of the deed, but, in so far as the variance is material, the pleading, we think, should control. That appellee accepted the deed from Key is abundantly supported by the evidence. It is not material, we think, as appellee seems to contend, that there was no discussion of the provisions of the deed at the time of its delivery. "The acceptance of a paper which purports to be a contract sufficiently indicates an assent to its terms, whatever they may be, and it is immaterial that they are, in fact, unknown." Williston on Contracts, § 90a.

Appellee says, when the deed was handed to him by Key, with directions to place it of record, Key said to him, "That will protect you and Joyce." How was it to protect appellee if not to show that appellee had better title to the land than Key had? If the deed did not express the terms of the agreement made in previous oral negotiations, then was the time for appellee to speak. His placing the deed of record evidences an acceptance. All previous oral negotiations became merged in it. As said by eminent authority:

"The rule applicable to all contracts, that prior stipulations are merged in the final and formal contract executed by the parties, applies, of course, to a deed based upon a contract to convey. * * * Though the terms, of the deed may vary from those contained in the contract, still the deed must be looked to alone to determine the rights of the parties." Devlin on Deeds, § 850a.

If a deed will supersede the provisions of a formal written contract, with much greater reason should it be held that it would supersede mere oral agreements in the nature of negotiations. If it was by inadvertence or mistake that the deed named Sallie Tate as one of the grantees, or more land was included than should have been (if the latter could have given appellee any equitable grounds for complaint, as to which we do not now inquire), appellee was not without remedy. He might seasonably have had equitable reformation, but not at this late date, as against appellants' plea of limitation to such action. In the absence of such action, appellee became and is subject to the rule stated in 7 R. C. L. 855, that:

"When one enters upon land he is presumed to enter under the title which his deed purports upon its face to convey, both as respects the extent of the land and the nature of the interest." McBurney v. Knox (Tex. Com. App.) 273 S. W. 819.

If appellee, by his pleading or evidence, shows a reliance on the Key deed, then there comes into operation the principle of estoppel by deed. From his pleading, considered alone, we are unable to say that he relies on this deed. It is for this reason that we have concluded there was no fundamental error apparent of record. But the entire proceedings do convince us that appellee, while disclaiming a purpose to do so, in fact, does rely on same. The deed marked the

boundaries that enabled appellee to establish title to portions of the land as against third parties that he could not have done under any claim of a parol purchase of the 183-acre tract.

In so far as the judgment awards recovery to appellee of land outside of the 183 and 175 acre·tracts on the ground that he acquired title thereto by limitations, it is dependent, to some extent at least, upon the deed. The possession that he claims has ripened into title by limitation to the exclusion of appellants was manifestly acquired in the first place by virtue of the deed he now seeks to repudiate. If he had never been in actual possession of any land outside the 183-acre tract, and the deed gave him no title to same, what was his basis of recovery? To us it is inconceivable that he could have recovered the land except upon the theory that his deed gave him title to same, or else his occupancy of the 183-acre tract under a deed de-. scribing the larger boundaries gave him such constructive possession as enabled him to recover. In either case he has availed himself of the deed to get a judgment against the appellants, which, under the terms of the deed and the·lack of any adverse possession as to the appellants, he could not have.

In Glover v. Thomas, 75 Tex. 507, 12 S. W. 684, to show common source of title plaintiffs offered in evidence a deed by Thompkins and Murphy to R. D. Glover, T. J. Jennings, and W. M. Thomas. Plaintiffs were claimants under Jennings and Thompkins, and defendant claimed under Glover. Defendant contended that the names of Jennings and Thomas had been inserted in the deed by mistake. The facts claimed to show such mistake were that the defendant's ancestor and the other grantees in the deed were partners; that Glover, in the division of partnership assets, became the owner of the debt which the deed was given to discharge, and therefore the names of Jennings and Thomas should not have been in the deed. But the Supreme Court held that, since the deed placed apparent title in the three grantees, and defendant was claiming under the deed, as was evidenced by the fact of his effort to show that the consideration for the deed passed from him and inured to his benefit, he could not deny the validity of the conveyance to the grantees named therein. The court did not view the matter as an estoppel in pais, but rather as an estoppel by deed. It· was not a jury question, but one of law. Such, we think, is the character of the question we are now considering. The principle is close akin to, if not the same as, that which prohibits a written instrument to be contradicted or varied by parol evidence.

In Bumpass v. Mitchell, 60 Tex. Civ. App. 361, 129 S. W. 194, in an instrument made contemporaneously with the conveyance of property to parties in trust, there was recited the existence of a contract to sell certain parts of the property to Bumpass and Mitchell upon specified considerations, and the trustees were directed to carry out the contracts by making the conveyances called for. Bumpass made. demand of the trustees to convey to him the property, alleging and offering to prove that Mitchell's name had been inserted without Mitchell's knowledge and at the instance of Bumpass to secure certain advances which Mitchell had made to him, and which at the time of the suit had all been repaid. It was held that the evidence to so show was not admissible, and the trustees could not be compelled to make the conveyance except in accordance with the terms of the agreement. Such evidence would vary the terms of the written instrument.

Upon such considerations, we are of the opinion that the trial court should have treated all of the land except the 175-acre tract, which will be discussed later, the same as the. 183-acre tract. Appellants should have been awarded recovery of a one-half undivided interest in all of the land except the 175-acre tract.

█ Appellee, being familiar with the terms of the bond for title from the Campbells to Key, accepted the deed from Key with knowledge that it conveyed only an equitable title. By the deed he succeeded to only such title as Key had, which was subject to the payment of the purchase money note for $391.93. When later Key informed appellee of his purpose to convey to Coggins, the holder of the note, and Hutchison, his attorney, the 175-acre tract and other lands, appellee seems to have made no objection. His later acceptance of a deed to the 175-acre tract sufficiently evidences his acquiescence in the act of Key in making said conveyance. We construe the transaction as affecting a rescission of the conveyance to him by Key as regards these tracts. In other words, appellee must be held to have consented that Coggins and his attorney should have all the rights that Tate had had to acquire legal title to the land. This required no instrument in writing, as has been held by our Supreme Court in Johnson v. Smith, 115 Tex. 193, 280 S. W. 158. Even independently of this authority, it has long been settled that a purely equitable title may be relinquished without deed. Rebold Lumber Co. v. Scripture (Tex. Civ. App.) 279 S. W. 586.

█ When appellee purchased the 175-acre tract from Coggins after Sallie Tate's death, it was acquired as his separate property, nothing appearing that it was burdened with any trust. The court correctly adjudged that part of the land to appellee. When C. C. Campbell and wife finally made a warranty deed to W. H. Key, it at once inured to appellee and his wife, Sallie Tate, or her heirs, except as to the land that had been relinquished to Coggins and Hutchison or any other party the land may have been relinquished to while held under equitable title,

and as to the 175-acre tract it also inured to appellee by virtue of Coggins' subsequent deed to him. It is wholly immaterial, so far as this case is concerned, whether C. C. Campbell and wife had a perfect title. Whatever its character or sufficiency, it was the common source of title of both appellee and appellants, and that is as far as the present inquiry need go.

We anticipate the argument, a basis for which is already laid in the record, that appellee, even under our holding, will be entitled to recover the strip 254 varas wide, lying south of the 175-acre tract, and between that tract and the south boundary line of the Joseph Robarth survey, on the ground that he had no possession of, and made no claim to, same prior to his acquisition from Coggins of the 175-acre tract, and that his subsequent adverse possession is referable to the claim through Coggins. But, as to this, we think that again appellee is estopped by his deed. He had no actual possession of the strip to the east and north of the 183-acre tract, yet at a time, when such was the case, he was able to procure judgment in his favor therefor. He either had title by his deed or his actual possession of the 183-acre tract under a deed describing the larger boundaries enabled him to do so. He held just the same title whether by muniments or limitation to the strip south of the 175-acre tract that he did to the other portions of the land outside of the 183-acre tract. It was within the bounds of his deed, and we think appellants are shown to be the owners of a one-half interest therein.

The judgment of the trial court will be reformed so as to award to appellants recovery of an undivided one-half interest in all of the land, except the 175-acre tract, which is adjudged to appellee, and, as so reformed, the judgment of the trial court will be affirmed.